[[c]]**COPY**

1 MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
2 RYAN C. KIRKPATRICK (243824)
rkirkpatrick@susmangodfrey.com
3 SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
4 Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
5 Facsimile:  (310) 789-3150

6 SHERRIE R. SAVETT
ssavett@bm.net
7 JON LAMBIRAS
jlambiras@bm.net
8 JEFF OSTERWISE
BERGER & MONTAGUE, P.C.
9 1622 Locust Street
Philadelphia, PA  19103
10 Tel:  (215) 875-3000
Fax:  (215) 875-4604

11

Attorneys for Plaintiff
12 and the Class

13              **UNITED STATES DISTRIC**
           **CENTRAL DISTRICT OF CALIFORNIA**
14                  **WESTERN DIVISION**

15 ROZ SCHWARTZ, on Behalf of Herself | Case No. CV10-710 RSWL (FMOx)
and All Others Similarly Situated,
16                                    | **CLASS ACTION**
                 Plaintiff,
17                                    | **CLASS ACTION COMPLAINT**
        vs.
18                                    | 1. **VIOLATION OF THE**
TOYOTA MOTOR SALES, U.S.A., INC.,    |    **CALIFORNIA UNFAIR**
19 TOYOTA MOTOR CORP., and           |    **COMPETITION LAW [CAL.**
DOE DEFENDANTS 1-10,                 |    **BUS. & PROF. CODE § 17200,**
20                                    |    **ET SEQ.];**
                 Defendants.         | 2. **NEGLIGENCE;**
21                                    | 3. **BREACH OF IMPLIED**
                                     |    **CONTRACT;**
22                                    | 4. **FALSE ADVERTISING [CAL.**
                                     |    **BUS. & PROF. CODE § 17500];**
23                                    | 5. **BREACH OF THE IMPLIED**
                                     |    **WARRANTY OF**
24                                    |    **MERCHANTABILITY;**
                                     | 6. **BREACH OF THE IMPLIED**
25                                    |    **WARRANTY OF FITNESS FOR**
                                     |    **A PARTICULAR PURPOSE**
26
                                     | **JURY TRIAL DEMANDED**
27

28

1    Plaintiff Roz Schwartz makes the following allegations based on an
2    investigation by Plaintiff's counsel that included, *inter alia*, review and analysis of
3    Defendants' websites, various other websites, various news articles, and filings in
4    other litigation against Defendants.    In support of Plaintiff's Class Action
5    Complaint ("Complaint"), Plaintiff alleges as follows:

6
7    <u>**JURISDICTION AND VENUE**</u>

8    1.    This Court has subject matter jurisdiction under the Class Action
9    Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of
10    diverse citizenship from at least one defendant; there are more than 100 class
11    members nationwide; and the aggregate amount in controversy exceeds $5 million.
12    This Court has personal jurisdiction over Defendants because Defendant Toyota
13    Motor Sales, U.S.A., Inc. is headquartered in California, and both Defendants
14    conduct business in this state.

15    2.    Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District
16    because a substantial part of the acts giving rise to Plaintiff's claims occurred in this
17    District.

18    <u>**NATURE OF ACTION**</u>

19    3.    This is a class action lawsuit against Defendants for an admittedly
20    dangerous defect in millions of its vehicles that can cause accelerator pedal
21    mechanisms to get stuck in an open position, which would cause the vehicle to
22    accelerate unintentionally ("unintended acceleration").

23    4.    Defendants issued two separate recalls to address problems with
24    unintended acceleration in its vehicles.  One involved accelerator pedals interfering
25    with floor mats (the "Floor Mat Interference" recall).  The other involved worn
26    accelerator mechanisms getting stuck in an open position, independent of any floor
27    mat interference (the "Worn Accelerator" recall).  In total, Defendants recalled
28    5.9 million cars due to these defects.

5.    Notably, the recalls did not provide immediate relief for vehicle owners. Rather, Toyota disclosed that dangerous defects existed and stated that Toyota would implement a repair plan in the future. With respect to the Floor Mat Interference recall, Toyota advised owners to remove the floor mats as an interim measure, and that more complete repairs would not be available for several weeks or months. With respect to the Worn Accelerator recall, Toyota advised owners of the dangerous condition and stated that a remedy was not yet available. These announcements left vehicle owners in the position of having to drive knowingly dangerous vehicles.

6.    Some vehicle owners, including Plaintiff Roz Schwartz, have driven their cars less than they otherwise would due to fear of being in an accident.

7.    Nearly 2,000 complaints about unintended acceleration in Toyota vehicles have reportedly been identified since 2001, including at least 19 deaths. Toyota was reportedly aware of many of the incidents, yet it failed to adequately investigate or fix the defect.

8.    Plaintiff seeks damages suffered by the Class as a result of Toyota's conduct, including but not limited to: (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, floor mats that had to be discarded, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

9.    Plaintiff also seeks injunctive relief including: (i) repairs to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the acceleration system; and (iii) individual notice to each owner effected by the Worn Accelerator recall disclosing the dangerous condition.

10.    An undated article on usatoday.com discussing the recalls stated: "Kelley Blue Book says resale values of [Toyota's] affected models could fall 4% to 5% within the next six weeks."

11.    Defendants' unlawful conduct emanated from California, where Toyota-USA is based.   On information and belief, this is where Defendants' decisions regarding safety issues, including the accelerator defect, were made or approved.

### PARTIES

12.    Plaintiff Roz Schwartz is a resident of Pennsylvania.  She owns a 2007 Toyota Camry, a model affected by both the Floor Mat Interference recall and Worn Accelerator recall.

13.    Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota-USA") is headquartered in Los Angeles, California.   Toyota-USA is a wholly owned subsidiary of Defendant Toyota Motor Corporation, and is responsible for the manufacture, distribution, and sale of all Toyota automobiles in the United States.

14.    Defendant Toyota Motor Corporation ("Toyota-Japan") is headquartered in Japan.  Toyota-Japan wholly owns and controls Toyota-USA and conducts business in this District.

15.    Toyota-USA and Toyota-Japan are collectively referred to herein as "Toyota."

16.    The names and capacities of DOE Defendants 1-10 are currently unknown to Plaintiff.  Each of the DOE Defendants is legally responsible for the unlawful acts alleged herein.

17.    At all relevant times, each defendant was acting as an agent or employee of each of the other and was acting within the course or scope of the agency with knowledge and consent of the other defendants.  Each of the acts and omissions complained of were made known to, and ratified by, each of the other defendants.

### FACTUAL BACKGROUND

**A.    Toyota's Electronic Throttle Control System**

18.    Beginning in the late 1990s and continuing to today, Toyota manufactured certain automobiles with an Electronic Throttle Control system ("ETC").

19.    Unlike traditional throttle control systems, where a physical cable connects the accelerator pedal to the engine throttle, under the ETC system, the engine throttle is controlled by electronic signals sent from the gas pedal to the engine throttle. A sensor at the accelerator detects how far the gas pedal is pressed and transmits that information to a computer module which controls a motorized engine throttle. The computer module determines how far the accelerator is depressed and, in turn, tells the engine throttle motor how far to open the throttle valve.

20.    When Toyota first introduced the ETC, they continued to include a mechanical linkage between the accelerator and the engine throttle control. This was meant as a safety measure in the event of a sudden unintended acceleration. The safety measure system would disconnect the ETC and automatically allow the throttle to be controlled by the mechanical linkage.

21.    Beginning with the 2001 model year, however, Toyota began manufacturing vehicles without a mechanical linkage.

22.    In addition, Toyota's ETC system fails to include a safety measure incorporated by other manufacturers that instructs the ETC system to reduce the engine idle when the brakes are applied.

23.    Also, many of Toyota's vehicles now include an electronic ignition button rather than a key-turned switch. In these cars, no easy mechanical means exist to turn off the engine in case of an unintended acceleration.

24.    The combination of a lack of these safety systems creates a situation in which there are no mechanical or electronic safety mechanisms to allow the driver to stop or slow the car during an unintended acceleration.

25.     Moreover, in a January 21, 2010 press release announcing the Worn Accelerator recall, Toyota warned drivers that, in the event of unintended acceleration, the "brakes should not be pumped repeatedly because it could deplete vacuum assist, requiring stronger brake pedal pressure." Thus, pumping the brakes, which occurs instinctually for some drivers, could impair the brakes.

**B.     Toyota's Recalls**

26.     On September 29, 2009, Toyota announced on its website that it was investigating the "potential for an accelerator pedal to get stuck in the full open position due to an unsecured or incompatible driver's floor mat." The unintended acceleration issue effected certain makes and models of Toyota's vehicles.

27.     On November 2, 2009, Toyota issued a press release announcing a "future voluntary recall" related to floor mats that interfere with accelerator pedals. Toyota stated that it had not yet developed a remedy, but it was advising owners to remove the driver's side floor mat as a temporary measure. Toyota also mailed letters to effected owners notifying them of the issue.

28.     The following makes and models were effected by the recall:

- 2007 – 2010 Camry
- 2005 – 2010 Avalon
- 2004 – 2009 Prius
- 2005 – 2010 Tacoma
- 2007 – 2010 Tundra
- 2007 – 2010 Lexus ES350
- 2006 – 2010 Lexus IS250 and IS350

29.     The recall initially effected 3.8 million vehicles. The number of vehicles was later increased to 4.2 million.

30.     On November 6, 2009, Toyota issued a press release responding to media reports about growing suspicion that the unintended acceleration was caused by a glitch in the "electronic engine management system" rather than simple

1  interference with floor mats. Toyota's press release noted that removal of floor

2  mats was only a temporary measure, and that further repairs would be needed once

3  a remedy was available.

4       31.    Thus, vehicle owners were placed in the position of having to drive

5  dangerously defective cars until a future remedy was implemented.

6       32.    On November 8, 2009, the Los Angeles Times reported that many

7  instances of unwanted acceleration had occurred:

8       More than 1,000 Toyota and Lexus owners have reported since

9       2001 that their vehicles suddenly accelerated on their own, in many

10       cases slamming into trees, parked cars and brick walls, among other

11       obstacles, a Times review of federal records has found.

12       The crashes resulted in at least 19 deaths and scores of injuries

13       over the last decade, records show. Federal regulators say that is far

14       more than any other automaker has experienced.

15       . . . .

16       In a written statement, the NHTSA [National Highway Traffic

17       Safety Administration] said its records show that a total of 15 people

18       died in crashes related to possible sudden acceleration in Toyota

19       vehicles from the 2002 model year and newer, compared with 11 such

20       deaths in vehicles made by all other automakers.

21       The Times located federal and other records of 19 fatalities

22       involving Toyota and Lexus vehicles from the same model years in

23       which sudden or unintended acceleration may have been a factor, as

24       well as more than 1,000 reports by owners that their vehicles had

25       suddenly accelerated. Independent safety expert Sean Kane, president

26       of Safety Research and Strategies, said he has identified nearly 2,000

27       sudden-acceleration cases for Toyota vehicles built since 2001.

28

33.  The article noted that Toyota was aware of many of the instances of unintended acceleration, and that Toyota withheld certain consumer complaints about unintended acceleration when responding to the NHTSA's requests for customer complaints.

34.  On November 25, 2009, Toyota issued a press release announcing a remedy it developed for the Floor Mat Interference recall. The shape of the accelerator pedal would be reconfigured for all effected vehicles. Also, the shape of the floor surface underneath the floor mat would be reconfigured for certain vehicles. Further, a break override system to cut engine power in case of simultaneous application of both the accelerator and brake pedals would be installed on certain vehicles. However, these repairs would not be available until at least another month for three Toyota models, and on a "rolling schedule during 2010" for the remaining five models. Thus, vehicle owners had to continue to drive dangerously defective cars.

35.  On December 5, 2009, the Los Angeles Times again reported that the unintended acceleration might be related to a problem beyond floor mat interference.

36.  On December 10, 2009, Toyota issued a statement on its website rebutting the Los Angeles Times report and denying that an electronic problem existed.

37.  On December 23, 2009, the Los Angeles Times reported that Toyota had a history of delaying recalls and keeping a "tight lid on disclosure of potential problems." The article outlined several instances of Toyota's failure to notify consumers of known dangerous conditions.

38.  On January 21, 2010, Toyota issued a press release stating that it would recall an additional 2.3 million vehicles. This recall, the Worn Accelerator recall, was "separate from the on-going recall of approximately 4.2 million Toyota and Lexus vehicles to reduce the risk of pedal entrapment by . . . floor mats." The

Worn Accelerator recall addressed a condition that "can occur when the pedal mechanism becomes worn and, in certain conditions, the accelerator pedal may become harder to depress, slower to return or, in the worst case, stuck in a partially depressed position." According to the press release, this defect was discovered when Toyota was investigating reports of sticking accelerator pedals "without the presence of floor mats." The Worn Accelerator recall involved the following Toyota models:

- 2009 – 2010 RAV4
- 2009 – 2010 Corolla
- 2009 – 2010 Matrix
- 2005 – 2010 Avalon
- 2007 – 2010 Camry
- 2010 Highlander
- 2007 – 2010 Tundra
- 2008 – 2010 Sequoia

39. Some, but not all, of these 2.3 million vehicles were also effected by the Floor Mat Interference recall. Approximately 1.7 million vehicles were effected by both recalls.

40. The January 21, 2010 press release noted that Toyota had not yet determined how to correct the defect underlying the Worn Accelerator recall. Thus, similar to owners subject to the Floor Mat Interference recall, owners subject to the Worn Accelerator recall could not yet bring their cars to dealerships for repairs. This left more owners in the position of having to drive a dangerously defective car indefinitely.

41. The Worn Accelerator recall was more serious than the Floor Mat Interference recall because drivers could not simply remove the floor mat as an interim measure.

42.   On January 26, 2009, Toyota issued a press release announcing that it would suspend sales of vehicles effected by the Worn Accelerator recall until a remedy was available.

43.   On January 27, 2010, Toyota announced on its website that the following additional models were being added to the Floor Mat Interference recall:

- 2008 – 2010 Highlander
- 2009 – 2010 Corolla
- 2009 – 2010 Venza
- 2009 – 2010 Matrix
- 2009 – 2010 Pontiac Vibe

This development increased the total number of vehicles subject to the Floor Mat Interference recall by 1.1 million, to a total of 5.3 million.

44.   Thus, to date, 5.9 million vehicles have been effected by one or both of the recalls: 5.3 million vehicles related to the Floor Mat Interference recall, plus 2.3 million vehicles related to the Worn Accelerator recall, less 1.7 million vehicles effected by both recalls.

45.   Given the approximately 2,000 instances of unintended acceleration since 2001, and Toyota's knowledge of many or all of the instances, Toyota should have aggressively investigated the cause of the unintended acceleration and developed a remedy.  Toyota failed to do either, evidenced by the fact that the first recall wasn't implemented until 2009, eight years after instances of unintended acceleration first began.

46.   Toyota also failed to notify vehicle owners effected by the Worn Accelerator recall.  Toyota announced the recall via press release.  However, Toyota has not contacted owners by mail or other direct means.  In light of the seriousness of the danger, Plaintiff seeks injunctive relief requiring Toyota to provide direct notice to owners effected by the Worn Accelerator recall, similar to the direct mail notice used in the Floor Mat Interference recall.

C.    **Plaintiff's Experiences**

47.    Plaintiff Roz Schwartz owns a 2007 Toyota Camry, a model affected by both the Floor Mat Interference recall and Worn Accelerator recall.

48.    In late 2009, she experienced unintended acceleration in her Camry. She was able to stop the car without incident.    She experienced unintended acceleration on other occasions since then.

49.    In late 2009, she received a letter from Toyota announcing the Floor Mat Interference recall. In response, she removed her floor mat.

50.    Schwartz has not received a letter from Toyota announcing the Worn Accelerator recall.

51.    Plaintiff has driven her Camry less often since learning of the recalls. She is concerned about putting herself or others at risk.  Also, she generally has not allowed passengers to drive with her, for fear that they might get hurt.  This has been an inconvenience to Plaintiff.

52.    She sometimes uses her husband's car in lieu of her Camry.  This is an inconvenience to both her and her husband.

53.    Plaintiff has lost trust in Toyota and her Camry.  She is skeptical that her Camry will not be safe even if Toyota fixes it.  She is also skeptical that, because Toyota's Floor Mat Interference recall did not completely resolve the acceleration problem (i.e., another recall was necessary), the Worn Accelerator recall might be equally incomplete and inadequate.

54.    She also believes that the resale value of her Camry will decrease due to general consumer skepticism about Toyota and the Camry model.

## CLASS ACTION ALLEGATIONS

55.    Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of all other persons similarly situated (the "Class"), defined as follows:

1       All persons or entities in the United States whose vehicles were

2       recalled by Toyota due to issues concerning unintended acceleration.

3       56.    The Class does not include Defendants or their officers or directors.

4       57.    Also excluded from the Class are individuals who have claims for personal injury as a result of unintended acceleration.  The claims at issue in this case do not seek damages for physical injury.  Thus, individualized determinations as to causation of bodily injury will not be required.  This class action only seeks the economic and equitable relief requested herein.

9       58.    The Class is comprised of millions of persons, making joinder of such cases impracticable.  Disposition of the claims in a class action context will provide substantial benefits to the parties and the Court.

12      59.    There are questions of law or fact common to the class, including but not limited to the following:

       a.    Whether the recalled automobiles contained a dangerous or defective condition;

       b.    Whether Defendants' conduct constituted actionable negligence;

       c.    Whether Defendants entered into and breached implied contracts;

       d.    Whether Defendants' conduct violated the California Unfair Competition law;

       e.    Whether Defendants' conduct constituted false advertising;

       f.    Whether Defendants' conduct constituted a breach of the implied warranty of merchantability; and

       g.    Whether Defendants' conduct constituted a breach of the implied warranty of fitness for a particular purpose.

26      60.    Plaintiff's claims are typical of the claims of the Class she seeks to represent.

61.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests that are antagonistic to or that irreconcilably conflict with those of other Class members. In addition, Plaintiff has retained counsel competent and experienced in the prosecution of class action litigation.

62.     Questions of law or fact common to Class predominate over any questions effecting only individual Class members.

63.     A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiff's and Class members' claims.

64.     Plaintiff and Class members have suffered similar harm as a result of Defendants' conduct. Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving millions of Class members.

65.     Class certification is appropriate under Fed. R. Civ. P. 23, as the Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3). Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) with respect to injunctive relief.

## FIRST CLAIM FOR RELIEF
## NEGLIGENCE

66.     Plaintiff re-alleges all preceding allegations as if fully set forth herein.

67.     Defendants assumed a duty to exercise reasonable care in, among other things, manufacturing and selling automobiles that did not contain a dangerous condition. Defendants' duties arose from, among other things, the relationship between the parties as buyers and sellers.

68.     Defendants also assumed a duty to adequately investigate claims of unintended acceleration and to timely notify Class members of known dangerous conditions.

69.     Defendants breached their duties by manufacturing and selling automobiles with dangerous accelerator systems. They also breached their duties

1  by failing to adequately investigate acceleration complaints and failing to

2  individually notify Class members of the Worn Accelerator recall and underlying

3  dangerous condition.

4       70.    But for Defendants' breach of duties, Plaintiff and Class members

5  would not be faced with driving unsafe automobiles and suffering the related

6  consequences alleged herein.

7       71.    Plaintiff and Class members suffered and will continue to suffer

8  damages including but not limited to those set forth in paragraph 8.

9

## SECOND CLAIM FOR RELIEF

## BREACH OF IMPLIED CONTRACT

12       72.    Plaintiff re-alleges all preceding allegations as if fully set forth herein.

13       73.    The essential elements of an implied contract under California law are

14  an offer, acceptance, and consideration. The existence and terms of the contract are

15  implied by the conduct of the parties.

16       74.    An offer, acceptance, and consideration for the sale of vehicles existed,

17  evidenced by the fact that Plaintiff and Class members paid money to Defendants in

18  exchange for vehicles. The act of exchanging money for vehicles was an offer and

19  acceptance. The money and vehicles constituted consideration.

20       75.    An implied term of the sale was that Defendants would provide

21  vehicles that did not contain an unreasonably dangerous condition. There was a

22  meeting of the minds regarding the absence of unreasonably dangerous conditions.

23       76.    Defendants' intent to provide safe vehicles was evidenced by, among

24  other things, its advertising and marketing materials emphasizing the safety

25  qualities of its vehicles. For example, a statement on Toyota's website dated

26  November 18, 2009 states: "Toyota is confident its vehicles are among the safest on

27  the road today and is committed to the highest levels of vehicle safety and quality."

28

1    In light of this statement and others like it, Plaintiff and Class members had a

2    reasonable expectation that the vehicles they purchased would not contain an

3    unreasonably dangerous condition.

4        77.    The absence of unreasonably dangerous conditions was a material term

5    to the contracts.    Plaintiff and Class members would not have purchased the

6    vehicles, or would not have paid the purchase price they paid, if they knew of the

7    unintended acceleration issue.

8        78.    Defendants breached the implied terms of their contracts by providing

9    vehicles that contained unreasonably dangerous conditions.

10       79.    Plaintiff and Class members suffered and will continue to suffer

11   damages including but not limited to those set forth in paragraph 8.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE
### CALIFORNIA UNFAIR COMPETITION LAW

16       80.    Plaintiff re-alleges all preceding allegations as if fully set forth herein.

17       81.    California Business and Professions Code § 17200 *et seq*., also known

18   as the Unfair Competition Law ("UCL"), prohibits unfair competition including

19   "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

20   untrue or misleading advertising." Cal. Bus. & Prof. § 17200.

21       82.    Defendants violated and continue to violate the UCL through one or

22   more of the following unfair practices:

23           a.    Manufacturing and selling vehicles containing a dangerous

24                 condition;

25           b.    Failing to adequately investigate claims of unintended

26                 acceleration;

27

28

        c.    Failing to individually notify Class members of the Worn Accelerator recall and underlying dangerous condition; and

        d.    Violating other laws alleged herein.

83.    Plaintiff and Class members suffered and will continue to suffer damages including but not limited to those set forth in paragraph 8.

84.    Defendants' conduct has impaired competition in the motor vehicle industry.   It provided Defendants with an unfair advantage compared to its competitors when manufacturing and selling vehicles and earning profits thereon.

85.    Plaintiff seeks the injunctive relief set forth in paragraph 9 pursuant to Cal. Bus. & Prof. §§ 17070 and 17203.

86.    As stated in Cal Bus. & Prof. § 17082, "[i]n any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof." To the extent actual damages are proven, Plaintiff may be entitled to "three times the amount of the actual damages." Plaintiff hereby seeks an award of actual and treble damages.

87.    Plaintiff also seeks an award of attorneys' fees and costs of the suit under Cal. Bus. & Prof. § 17082.

## FOURTH CLAIM FOR RELIEF
## FALSE ADVERTISING

88.    Plaintiff re-alleges all preceding allegations as if fully set forth herein.

89.    California Business and Professions Code § 17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication,

1    or any advertising device, . . . or in any other manner or means

2    whatever, including over the Internet, any statement . . . which is

3    untrue or misleading, and which is known, or which by the exercise of

4    reasonable care should be known, to be untrue or misleading . . . .

5    90.   Toyota stated directly and indirectly in various marketing and

6    advertising campaigns that its vehicles are safe and reliable.   For example, a

7    statement on Toyota's website dated November 18, 2009 states: "Toyota is

8    confident its vehicles are among the safest on the road today and is committed to

9    the highest levels of vehicle safety and quality."   These statements were untrue in

10   light of the problems with unintended acceleration.

11   91.   Defendants' statements in its brochures, websites, television ads,

12   newspaper ads, and other means constituted advertising for purposes of this claim.

13   92.   Defendants' advertising program contained statements concerning

14   vehicle safety and reliability that were false or misleading and that were known or

15   should have been known to Defendants to be false or misleading.

16   93.   As a direct result of Defendants' unlawful conduct, Plaintiff and the

17   Class have suffered the damages set forth in paragraph 8.

## FIFTH CLAIM FOR RELIEF
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

21   94.   Plaintiff re-alleges all preceding allegations as if fully set forth herein.

22   95.   Defendants' vehicles were accompanied by an implied warranty of

23   merchantability when sold, pursuant to California Civil Code § 1792.

24   96.   California Civil Code § 1791.1(a) states:

25   "Implied warranty of merchantability" or "implied warranty

26   that goods are merchantable" means that the consumer goods

27   meet each of the following:

28

1.   Pass without objection in the trade under the contract description.

2.   Are fit for the ordinary purposes for which such goods are used.

3.   Are adequately contained, packaged, and labeled.

4.   Conform to the promises or affirmations of fact made on the container or label.

97.   The vehicles encompassed by Toyota's recalls would not pass without objection in the automotive trade. The vehicles are unreasonably dangerous and in need of repair.

98.   The vehicles are not fit for the ordinary purpose for which they were sold. The vehicles were purchased to, among other things, safely transport drivers and passengers. The vehicles cannot be used for safe transportation in their current condition.

99.   The vehicles were not adequately labeled because the labeling failed to disclose the dangerous conditions.

100.   Defendants breached the implied warranty of merchantability by manufacturing and selling vehicles containing an unreasonably dangerous condition. ·

101.   As a result of Defendants' unlawful conduct, Plaintiff and the Class have suffered and will continue to suffer the damages set forth in paragraph 8.

102.   Plaintiff seeks the injunctive relief set forth in paragraph 9 pursuant to California Civil Code § 1794.

103.   Plaintiff also seeks an award of attorneys' fees and costs under California Civil Code § 1794.

## SIXTH CLAIM FOR RELIEF
## BREACH OF THE IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

104. Plaintiff re-alleges all preceding allegations as if fully set forth herein.

105. California Civil Code § 1792.1 states:

Every sale of consumer goods that are sold at retail in this state by a manufacturer who has reason to know at the time of the retail sale that the goods are required for a particular purpose and that the buyer is relying on the manufacturer's skill or judgment to select or furnish suitable goods shall be accompanied by such manufacturer's implied warranty of fitness.

106. California Civil Code § 1791.1(b) states:

"Implied warranty of fitness" means (1) that when the retailer, distributor, or manufacturer has reason to know any particular purpose for which the consumer goods are required, and further, that the buyer is relying on the skill and judgment of the seller to select and furnish suitable goods, then there is an implied warranty that the goods shall be fit for such purpose.

107. Defendants knew at the time they sold vehicles to Class members that such vehicles would be used for the specific purpose of, among other things, providing safe transportation.

108. Defendants knew that Class members were relying on Defendants' skill and judgment in furnishing and/or recommending vehicles that were purportedly suitable for providing safe transportation.

1    109.   Defendants breached the implied warranty of fitness because the

2    vehicles contained an unreasonably dangerous condition and were not suitable for

3    providing safe transportation.

4    110.   As a direct result of Defendants' unlawful conduct, Plaintiff and the

5    Class have suffered and will continue to suffer the damages set forth in paragraph 8.

6    111.   Plaintiff also seeks the injunctive relief set forth in paragraph 9

7    pursuant to California Civil Code § 1794.

8    112.   Plaintiff also seeks an award of attorneys' fees and costs under

9    California Civil Code § 1794.

10

11                      **<u>PRAYER FOR RELIEF</u>**

12    WHEREFORE, Plaintiff, individually and on behalf of all others similarly

13    situated, respectfully requests that the Court enter an Order:

14    A.    Certifying the proposed Class under Fed. R. Civ. P. 23(b)(2) and (3)

15          and appointing Plaintiff and Plaintiff's counsel to represent the Class;

16    B.    Finding that Defendants are liable under all legal claims asserted

17          herein;

18    C.    Awarding damages to the Class under the common law and statutory

19          theories alleged herein, including compensatory and consequential

20          damages as set forth in paragraph 8, punitive damages, and any other

21          damages provided under the law;

22    D.    Ordering injunctive relief as set forth in paragraph 9;

23    E.    Awarding attorneys' fees and litigation costs; and

24    F.    Awarding any other legal or equitable relief as justice so requires.

25

26

27

28

1  Dated: February 1, 2010.

2                                          MARC M. SELTZER
                                           RYAN C. KIRKPATRICK
3                                          SUSMAN GODFREY L.L.P.

4                                          SHERRIE R. SAVETT
                                           JON LAMBIRAS
5                                          JEFF OSTERWISE
                                           BERGER & MONTAGUE, P.C.
6

7                                          By _____
8                                               Marc M. Seltzer
                                               Attorneys for Plaintiff
9                                              and the Class

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  February 1, 2010.

                                   MARC M. SELTZER
                                   RYAN C. KIRKPATRICK
                                   SUSMAN GODFREY L.L.P.

                                   SHERRIE R. SAVETT
                                   JON LAMBIRAS
                                   JEFF OSTERWISE
                                   BERGER & MONTAGUE, P.C.


                                   By _____
                                        Marc M. Seltzer
                                   Attorneys for Plaintiff
                                   and the Class

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Ronald S. W. Lew and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV10- 710 RSWL (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.



Name & Address:
Ryan C. Kirkpatrick (243824) - Tel: (310) 789-3100
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ROZ SCHWARTZ, on behalf of herself
and all others similarly situated,

PLAINTIFF(S)

v.

TOYOTA MOTOR SALES, U.S.A., INC., and
TOYOTA MOTOR CORP., and
DOE DEFENDANTS 1-10,

DEFENDANT(S).

CASE NUMBER

CV10-710 RSWL (FMOx)

**SUMMONS**

TO:    DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Ryan C. Kirkpatrick , whose address is Susman Godfrey L.L.P., 1901 Avenue of the Stars, Ste. 950, Los Angeles, CA 90067 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ____2/1/10____

By: _____
                    Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (12/07)                          **SUMMONS**



Name & Address:
Ryan C. Kirkpatrick (243824) - Tel: (310) 789-3100
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ROZ SCHWARTZ, on Behalf of Herself
and All others Similarly Situated,

PLAINTIFF(S)

v.

TOYOTA MOTOR SALES, U.S.A., INC., and
TOYOTA MOTOR CORP., and
DOE DEFENDANTS 1-10,

DEFENDANT(S).

CASE NUMBER

CV10-710 RSWL (FMOx)

**SUMMONS**

TO:     DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Ryan C. Kirkpatrick_____, whose address is _Susman Godfrey L.L.P., 1901 Avenue of the Stars, Ste. 950, Los Angeles, CA 90067____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __2/1/10__

By: _____
Deputy Clerk

**SEAL**

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) | **DEFENDANTS** |
|---|---|
| ROZ SCHWARTZ | Toyota Motor Sales, U.S.A., Inc. |

| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | **Attorneys** (If Known) |
|---|---|
| Marc M. Seltzer, Ryan C. Kirkpatrick, SUSMAN GODFREY L.L.P., 1901 Ave. of the Stars, Suite 950, Los Angeles, CA 90067-6029; Tel: (310) 789-3100 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No        ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Manufacture and sale of millions of vehicles with dangerous defective condition.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☑ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **FORFEITURE/ PENALTY** | | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 610 Agriculture | | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | **CIVIL RIGHTS** | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 442 Employment | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | ☐ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**    Case Number: _____ CV10-710 _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): 09-8143; 09-8478; 10-105

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☑ A. Arise from the same or closely related transactions, happenings, or events; or
   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Pennsylvania |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Toyota Motor Sales, U.S.A., Inc. - Los Angeles County<br>Toyota Motor Corp. - Japan |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Pennsylvania |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date February 1, 2010

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |